JUDGEMENT:
REVERSED AMD REMANDED
{¶ 1} Appellants, Cherita Rankin and Estella Rankin, appeal from the grant of summary judgment in favor of the Cuyahoga County Department of Children and Family Services ("DCFS"), its director, James McCafferty, and its employee, Gina Zazzara ("appellees"). After reviewing the record and the arguments of the parties, and for the reasons set forth below, we reverse and remand for further proceedings.
 {¶ 2} On April 14, 2004, Charita Rankin, the mother and next friend of minor-victim D.M.,[1] filed a civil complaint in the common pleas court against DCFS and D.M.'s father, Andre Martin. On July 14, 2004, an amended complaint was filed, which included Estella Rankin, D.M.'s grandmother and legal guardian, as a plaintiff, and added James McCafferty and Gina Zazzara as defendants. The cause of action stemmed from Andre Martin's sexual assault of D.M., who was three years old at the time, during a DCFS supervised visit at a DCFS facility.
 {¶ 3} In April 2003, D.M. was committed to the temporary custody of DCFS by order of the Juvenile Division of the Cuyahoga County Common Pleas Court. Pursuant to that order, Martin's contact with D.M. was limited to supervised visits at the Jane Edna Hunter Social Service Center, a county agency located in Cleveland. During the time D.M. was in DCFS custody, DCFS was on notice of past accusations of sexual abuse by Martin against D.M. and Martin's history of domestic violence.
 {¶ 4} On July 23, 2003, Martin had a supervised visit with D.M. Despite prior warnings not to allow any of Martin's activities with D.M. to go unsupervised, during the course of this visitation, Martin was allowed to take D.M. into a private restroom where he sexually assaulted her. Afterwards, Martin took D.M. back to the visitation room and placed her on his lap. He then placed a jacket over her lap and placed his hand under her clothing and fondled her genitals. Although Martin was under surveillance at the time, at no time did anyone from DCFS remove D.M. from Martin or contact the police.
 {¶ 5} Martin eventually faced criminal charges for this incident and pleaded guilty to gross sexual imposition on October 21, 2003.[2]
 {¶ 6} Appellants thereafter filed their civil complaint against appellees, alleging that appellees breached the duty they owed to D.M. by failing to protect her from Martin's sexual abuse. On June 17, 2004, appellees filed a motion to dismiss the complaint, which the trial court later held to be moot. During the course of discovery, appellants requested the production of documents concerning certain materials from DCFS. Appellees filed a motion for protective order and a request for an in camera inspection on November 30, 2004. Appellants filed a brief in opposition, but the trial court eventually denied appellants' discovery requests.
 {¶ 7} On May 2, 2005, appellees filed a motion for summary judgment arguing several reasons, including that DCFS was not sui juris and appellees were immune from liability pursuant to R.C. Chapter 2744. On June 17, 2005, the trial court granted summary judgment in favor of appellees.[3]
 {¶ 8} Appellants appeal, asserting three assignments of error. Because assignments of error I and II are substantially interrelated, we address them together.
 {¶ 9} "I. The trial court committed reversible error when it granted summary judgment to Defendant DCFS.
 {¶ 10} "II. The trial court committed reversible error when it granted summary judgment to Defendants Mr. McCafferty and Ms. Zazzara."
 {¶ 11} In their first two assignments of error, appellants contend that the trial court erred in granting summary judgment to appellees. Upon review of the record, we sustain appellants' assignments of error.
 Summary Judgment {¶ 12} "Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
 {¶ 13} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1987), 477 U.S. 317, 330,106 S.Ct. 2548, 91 L.Ed. 2d 265; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.
 {¶ 14} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of therecord which demonstrate the absence of a genuine issue of fact ormaterial element of the nonmoving party's claim." Id. at 296. (Emphasis in original.) The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth "specific facts" by the means listed in Civ. R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 15} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ. R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v.McFaul (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. LeadworksCorp. (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140.
 DCFS {¶ 16} Appellants' first assignment of error focuses on the trial court's error in granting summary judgment in favor of DCFS. In defending the trial court's ruling, appellees assert several arguments. DCFS states that it is not sui juris, arguing that it is not a "political subdivision," as defined in R.C. 2744.01, thus it is not a legally recognized entity capable of being sued. DCFS further argues that it is statutorily immune from liability and that, even if it was found not to be immune, the evidence shows it has not violated any applicable law.
 {¶ 17} Viewing these arguments in a light most favorable to appellants, we hold that there are genuine issues of material fact pertaining to the liability of DCFS that must survive summary judgment.
 {¶ 18} In viewing R.C. Chapter 2744, it is apparent that DCFS is an entity that is capable of being sued given the circumstances of this case. "Under R.C. 2744.01(F), a county is a political subdivision, and the operation of a county human services department is a governmental function. R.C. 2744.01(C)(2)(m); Jackson v. Butler County Bd. of CountyCommrs. (1991), 76 Ohio App.3d 448, 602 N.E.2d 363." Sobiski v.Cuyahoga County Dep't of Children Family Servs, Cuyahoga App. No. 84086,2004-Ohio-6108.
 {¶ 19} Furthermore, there is no prejudicial effect in naming DCFS, as opposed to Cuyahoga County. The county prosecutor's office would be the representing body in either case, and the party liable for any damages would not change. See Fields v. Dailey (1990), 68 Ohio App.3d 33. Thus, all interests are properly being protected, and the named party is a technicality without distinction. Id. Given these circumstances, we find that DCFS is an entity capable of being sued.
 {¶ 20} Summary judgment also should not have been granted on the theory that DCFS was immune from any liability in this case. Ohio statute provides an analysis to determine whether or not a political subdivision or its employees have immunity. See Sobiski, supra; see, also, Cater v. Cleveland, 83 Ohio St.3d 24, 28, 1998-Ohio-421,697 N.E.2d 610.
 {¶ 21} R.C. 2744.02(A)(1) confers on all political subdivisions a blanket immunity, which provides that they are not liable for injury, death or loss to persons or property that occurred in relation to the performance of a governmental or propriety function. Id.
 {¶ 22} There are exceptions to this blanket immunity, including what is known as the "special relationship" exception. Under the special relationship exception, "a political subdivision may be liable for damages if it can be shown that a `special relationship' existed between the political subdivision and the injured party thereby imposing a `special duty' under the law. See Sawicki v. Ottawa Hills (1988),37 Ohio St.3d 222, 525 N.E.2d 468. * * * In order to demonstrate a special duty or relationship, it must be shown that there was (1) an assumption of an affirmative duty by a political subdivision; (2) knowledge on the part of the political subdivision or its agents that inaction could cause harm; (3) a direct contact between the political subdivision's agents and the injured party; and (4) that party's justifiable reliance on the political subdivision's affirmative undertaking." State Auto.Mut. Ins. Co. v. Titanium Metal Corp., 159 Ohio App.3d 338, 343,2004-Ohio-6618.
 {¶ 23} In the case before us, there are genuine issues of material fact as to whether appellant has met the requirements of the special relationship exception to defeat appellees' claim of immunity. When DCFS gained custody of D.M., it took on the affirmative duty to provide that little girl with safety, particularly during supervised visits with her abusive father. After being sufficiently warned of what the father was capable of, DCFS was also on notice that its failure to protect D.M. could lead to injury. There was direct contact between D.M. and DCFS, and D.M. was clearly justified in relying on DCFS for reasonable protection. It would be error to grant summary judgment in this case on the basis of immunity.
 {¶ 24} Further, there is sufficient evidence for appellants to bring a cause of action to hold appellees liable for the harm done to D.M. Even with the limited evidence provided in the record after the trial court denied much of appellants' request for discovery, there is still proof that the practices and procedures of DCFS allowed for the sexual abuse of a minor child while she was under the protection of DCFS.
 {¶ 25} Martin was regularly allowed to take D.M. into a private bathroom, even though DCFS was well aware of the dangers of such action. There was also evidence that even when DCFS employees observed Martin touching D.M. inappropriately, they did nothing to stop it. In addition, there was evidence that the proper people were not present when needed. There is enough evidence present for this matter to survive summary judgment and to be presented to a finder of fact.
 McCafferty and Zazzara {¶ 26} Appellants' second assignment of error focuses on the trial court's error in granting summary judgment in favor of McCafferty and Zazzara. In defending the trial court's ruling, appellees argue that McCafferty and Zazzara were not involved with the supervised visit at issue, so they are immune from liability. In viewing the record and the applicable law, we hold that there are genuine issues of material fact pertaining to these appellees that must survive summary judgment.
 {¶ 27} Under R.C. 2744.03(A)(6), when a party puts forth evidence showing that an individual's actions "were with a malicious purpose, in bad faith, or [done] in a wanton or reckless manner," individual immunity no longer applies. Shadoan v. Summit Cty. Children Servs.Bd., Summit App. No. 21486, 2003-Ohio-5775; Cobb v. Mantua Twp. Bd. ofTrustees, Portage App. No. 2000-P-0127, 2001-Ohio-8722. "[A]n individual acts in a `reckless' manner if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." Jackson v. ButlerCty. Bd. of Cty. Commsrs. (1991), 766 Ohio App.3d 448, 602 N.E.2d 363, at syllabus. Thus, recklessness is a perverse disregard for a known risk.
 {¶ 28} In this case, reasonable minds could conclude that these two individuals acted in a reckless manner in allowing these "supervised" visits between Martin and D.M. to be conducted as they were. McCafferty is the director of DCFS and Zazzara is a DCFS employee who was the social worker assigned to D.M.'s case. Both individuals knew Martin had a history of domestic violence and had allegedly molested D.M. in the past. In addition, Zazzara received direct notification from appellants prior to the July 23rd incident that Martin had been taking D.M. into the bathroom during his visits, which he was not supposed to do. Zazzara assured appellants that this behavior would no longer be permitted, but Martin continued to be allowed free access to D.M. during his "supervised" visits.
 {¶ 29} Because we find that there are genuine issues of material fact left for the trier of fact, appellants' first two assignments of error are sustained.
 {¶ 30} "III. The trial court committed reversible error when it failed to allow Plaintiffs to obtain documents requested from Defendants and refused to allow Plaintiffs to take the deposition of Mr. McCafferty and Ms. Zazzara."
 {¶ 31} In their third assignment of error, appellants challenge discovery rulings made by the trial court. They specifically argue that the trial court erred in refusing to allow them to obtain certain documents from appellees and that the trial court erred in refusing to allow them to depose McCafferty and Zazzara. We agree.
 {¶ 32} Under Ohio law, it is well established that the trial court is vested with broad discretion when it comes to matters of discovery, and the "standard of review for a trial court's discretion in a discovery matter is whether the court abused its discretion." Mauzy v. KellyServices, Inc., 75 Ohio St.3d 578, 1996-Ohio-265, 664 N.E.2d 1272. To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable.Blakemore v. Blackemore (1983), 5 Ohio St.3d 217, 50 OBR 481,450 N.E.2d 1140. Absent a clear abuse of that discretion, the lower court's decision should not be reversed. Mobberly v. Hendricks (1994),98 Ohio App.3d 839, 845, 649 N.E.2d 1247. However, appellate courts will reverse a discovery order "when the trial court has erroneously denied or limited discovery." 8 Wright, Miller Marcus, Federal Practice 
Procedure (2d Ed. 1994) 92, Section 2006. Thus, "an appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights." Rossman v. Rossman (1975),47 Ohio App.2d 103, 110, 352 N.E.2d 149.
 {¶ 33} After an in camera inspection of the materials requested by appellants, the trial court found that the requested discovery was confidential and protected under Ohio law. The court held that appellants were not entitled to any of the DCFS documents, nor were they allowed any deposition testimony from McCafferty or Zazzara. While the trial court is afforded broad discretion in making such determinations, its ruling here is so overreaching that, when taken in its totality, we find it to be an abuse of discretion.
 {¶ 34} The confidentiality statutes pertinent are R.C. 5153.17 and R.C. 2151.421(H)(1). R.C. 5153.17 states:
 {¶ 35} "The public children services agency shall prepare and keep written records of investigations of family, children, and foster homes, and of the care, training, and treatment afforded children, and shall prepare and keep such other records as are required by the department of job and family services. Such records shall be confidential, but except as provided by division (B) of section 3107.17 of the Revised Code, shall be open to inspection by the agency, the director of job and family services, and the director of the county department of job and family services, and by other persons upon the written permission of the executive director."
 {¶ 36} Furthermore, R.C. 2151.421(H)(1), which is concerned with the reporting and investigation of cases of child abuse, states that any report made under that section is confidential; however, "[although the [DCFS's] records are afforded confidentiality under R.C. 5153.17 and R.C. 2151.421(H)(1), this confidentiality is not absolute. SeeJohnson v. Johnson (1999), 134 Ohio App.3d 579, 583, 731 N.E.2d 1144;Sharpe v. Sharpe (1993), 85 Ohio App.3d 638, 620 N.E.2d 916.
 {¶ 37} The proper procedure for determining the availability of such records is for the trial court to conduct an in camera inspection to determine the following: 1) whether the records are necessary and relevant to the pending action; 2) whether good cause has been shown by the person seeking disclosure; and 3) whether their admission outweighs the confidentiality considerations set forth in R.C. 5153.17 and R.C. 2151.421(H)(1). Johnson, 134 Ohio App.3d at 585." Child Care ProviderCertification Dept. v. Harris, Cuyahoga App. No. 82966, 2003-Ohio-6500.
 {¶ 38} Appellants' request for discovery included documents specifically concerning the incident of July 23, 2003 and generally concerning the practices and procedures of the agency regarding supervised visits. Clearly, such materials are necessary and relevant to the pending action. The question remains whether appellants have shown "good cause" for disclosure and whether the admissions outweigh the confidentiality considerations articulated in Ohio law.
 {¶ 39} "In determining whether `good cause' has been shown, the consideration is whether it is in the `best interests' of the child, or the due process rights of the accused are implicated. SeeJohnson, 134 Ohio App.3d at 583; 1991 Ohio Atty.Gen.Ops. No. 91-003."Harris, supra.
 {¶ 40} It is clear appellants have shown good cause for the requested materials. The best interests of the minor victim involved in this case would be served in holding people and entities responsible for any deficiencies in her supervision.
 {¶ 41} Confidentiality considerations cannot destroy the discoverability of all the requested documents. Andre Martin's criminal proceedings and the discovery involved in that case lessen pertinent due process rights protections. Any further protections of DCFS employees who might be implicated with this discovery would not be affected by general disclosures of DCFS's practices and procedures concerning supervised visits. The lower court's denial of all requested documents amounted to an abuse of discretion.
 {¶ 42} In addition, to rely on affidavit testimony of McCafferty and Zazzara and yet not allow appellants any right to depose these individuals also amounts to an abuse of discretion. The scope of pretrial discovery is broad. Grandview Hosp. Medical Center v.Gorman (1990), 51 Ohio St.3d 94, 554 N.E.2d 1297. Deposition testimony from these individuals was denied for fear that the information sought from those people would be confidential; however, nothing in the record illustrated exactly what appellants intended to ask during deposition. Not all information surrounding this litigation is confidential, and liberal discovery is the general rule. Any confidential information procured in the course of a deposition can be excluded at the appropriate time.
 {¶ 43} The total denial of pertinent discovery substantially affected appellants' rights and was an abuse of discretion. The trial court's discovery rulings must be more specific and narrowly tailored. This assignment of error is sustained.
 {¶ 44} Judgment is reversed and the case is remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellants recover from appellees costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, J., and ANTHONY O. CALABRESE, JR., J., CONCUR
[1] The minor-victim is referred to herein by her initials in accordance with this court's established policy regarding non-disclosure of identities of juveniles.
[2] Cuyahoga County Court of Common Pleas — Case No. CR441511.
[3] A default judgment was entered against Andre Martin on May 16, 2006, and no matter pertaining to Martin is at issue in this appeal.